FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 02, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELINDA AND THOMAS TRUEAX, individually, and in their capacities as parents and guardians of minor student, G.T., individually,<br><br>Plaintiffs,<br><br>vs.<br><br>OTHELLO SCHOOL DISTRICT,<br><br>Defendant. | No. 2:25-CV-00111-MKD<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>**ECF No. 46** |

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 46. Lara Hruska, Ryan Ford, and Rachel Sugar represent Plaintiffs. Paul Triesch represents Defendant. The Court has considered the motion, reviewed the record, and is fully informed. For the following reasons, the Court grants in part and denies in part the motion.

## BACKGROUND

### A. Factual Background

The following facts are undisputed except where expressly noted. G.T.

attended McFarland Middle School (“McFarland”) within Defendant Othello School District during his seventh through ninth grade years. ECF No. 68 at 2. Plaintiffs Melinda and Thomas Trueax are his parents. *Id.* G.T. has been diagnosed with autism, gastroesophageal reflux disease, cardiomyopathy, congestive heart failure, and oral aversions. *Id.* He receives nutrition through a feeding tube (“g-tube”) and primarily communicates through an Augmentative and Alternative Communications (“AAC”) device. *Id.* While enrolled at McFarland, G.T. had Individualized Education Programs (“IEPs”). *Id.* His instruction included Jenna Greeno’s special education/life skills classroom and Iyenika Ramirez-Morelos’s special education classroom for reading. ECF No. 47 at 5.

In Spring 2023, G.T. was reenrolled at McFarland for ninth grade rather than transitioning to Othello High School. ECF No. 68 at 3. The parties dispute the circumstances of that decision. Defendant’s Director of Special Education, Heidi Wagner, states that the IEP team considered G.T.’s behavioral progress, familiarity with McFarland, and ability to navigate its smaller setting, and that his parents agreed he should remain there. ECF No. 47 at 4. Plaintiffs state that the decision was presented to them without an opportunity for meaningful input and that they wanted him to advance to the high school. ECF No. 59 at 3; ECF No. 60 at 4. During the 2023-2024 school year, six IEP teams selected McFarland as the appropriate setting for their students’ ninth grade year, while 39 students with IEPs

attended ninth grade at Othello High School. ECF No. 68 at 3.

G.T.'s feeding plan called for two of his four daily feedings to occur during school hours. *Id.* at 2. Each feeding required approximately one and one-half to two hours, with the first beginning between 9:00 and 10:00 a.m. and the second between 1:00 and 2:00 p.m. *Id.* at 3. Greeno was primarily responsible for his feedings at McFarland. ECF No. 50 at 3. The parties dispute the extent to which G.T. could manage the feeding process independently. Greeno states that she or her paraeducators reminded G.T. to begin his feedings and assisted when necessary, and that she provided assistance during approximately 40 percent of his feedings. *Id.* Plaintiffs contend that although he could perform individual tasks, he could not independently remember and complete the entire feeding process. ECF No. 59 at 2; ECF No. 60 at 3.

The parties agree that G.T. missed a feeding on September 11, October 16, October 18, and November 3, 2023, but dispute whether he missed additional feedings. ECF No. 68 at 3. Greeno attributes those four incidents to a knot in the tube, failures to connect the tube, and lateness for the bus. ECF No. 50 at 4-5. She states that those were the only feedings G.T. missed at McFarland. *Id.* at 5. Mr. Trueax estimates that G.T. missed between 10 and 13 feedings during Fall 2023 and recalls at least two occasions when both feeding bags remained full when G.T. returned from school. ECF No. 59 at 3. Mrs. Trueax similarly estimates that G.T.

returned home with full feeding bags more than ten times. ECF No. 60 at 5. She states that she notified Greeno on November 7, 2023, that G.T. was losing weight because of missed school feedings, and that missed feedings continued afterward. *Id.* at 7.

G.T. also had longstanding sensitivity to certain sounds, including coughing. ECF No. 59 at 2. The parties dispute the nature of his reactions and Defendant's response. Wagner describes his covering his ears and refusing schoolwork as behaviors intended to avoid assignments. ECF No. 47 at 2. Mrs. Trueax describes those behaviors as responses to distressing sensory experiences. ECF No. 60 at 4. Plaintiffs state that, during a November 2023 classroom visit, they observed G.T. cover his ears when Ramirez-Morelos coughed, and state that his feeding began late and that, when his pump sounded an alarm, Ramirez-Morelos directed him to fix it without providing assistance, despite his increasing distress. ECF No. 59 at 4; ECF No. 60 at 6. On November 20, 2023, G.T. pulled his feeding tube out of the "button" on his abdomen while in Ramirez-Morelos's classroom. ECF No. 68 at 3.

Plaintiffs participated in an IEP meeting on December 4, 2023. *Id.* at 3. The IEP developed at that meeting included a feeding-independence goal, with a stated baseline of "0% accuracy (with help)" and a goal of "80% accuracy (with no help)" by December 3, 2024. ECF No. 50-2 at 12. The parties dispute what was

said at the meeting about G.T.'s sensitivity to coughing. Mrs. Trueax testified that Greeno and Ramirez-Morelos acknowledged deliberately coughing around G.T. to desensitize him. ECF No. 57 at 69. Mr. Trueax similarly states that both teachers described efforts to desensitize G.T. to coughing. ECF No. 59 at 4. Wagner states that the team discussed desensitization but rejected the strategy after Plaintiffs reported that it had previously been unsuccessful, expressly denying that G.T. was deliberately exposed to coughing at McFarland. ECF No. 47 at 5.

Plaintiffs, supported by a request from his pediatrician, Dr. Gabriel Barrio, sought to have G.T. removed from Ramirez-Morelos's reading classroom and instructed solely in Greeno's classroom. *Id.* at 5. Defendant declined the request. ECF No. 68 at 3. Wagner explains that the team considered Ramirez-Morelos's classroom the least restrictive environment for G.T.'s reading instruction and noted that students and staff also occasionally coughed in Greeno's classroom. ECF No. 47 at 6. Mrs. Trueax disputes the adequacy of that response, stating that Ramirez-Morelos's cough persisted for months and that Defendant declined to move G.T. despite his distress and the physician's request. ECF No. 60 at 8.

The parties also dispute the effects of G.T.'s school experiences on his physical and emotional health. Plaintiffs describe increasing reluctance to attend school and instances of his returning home crying, screaming, and shaking. ECF No. 59 at 4. G.T. states that missed feedings caused sadness and stomach pain.

ECF No. 58 at 2. The parties agree that his recorded weight was 91.25 pounds on August 28, 2023, 88 pounds on November 28, 2023, 88.5 pounds on December 6, 2023, and 92 pounds on January 15, 2024. ECF No. 68 at 2.

On December 22, 2023, Plaintiffs submitted a choice transfer request, which Defendant approved on January 16, 2024. *Id.* at 3-4. His parents withdrew him from Defendant in January 2024, and he began attending Washington Connections Academy, an online school, that month. ECF No. 47 at 3; ECF No. 60 at 10. Michelle Taylor, ARNP, subsequently diagnosed G.T. with posttraumatic stress disorder in January 2025. ECF No. 57 at 60. Mrs. Trueax attributes depression, anxiety, intrusive thoughts, and increased alcohol consumption to G.T.'s experiences at McFarland and states that she regularly attends counseling. ECF No. 60 at 10.

**B. Procedural History**

Plaintiffs' operative amended complaint asserts the following thirteen causes of action: discrimination under Section 504 of the Rehabilitation Act of 1973 (Count I); discrimination under the Washington Law Against Discrimination ("WLAD") (Count II); negligence (Count III); G.T.'s negligent infliction of emotional distress claim (Count IV); intentional infliction of emotional distress (Count V); loss of consortium (Count VI); Mrs. Trueax's bystander negligent infliction of emotional distress claim (Count VII); discrimination under the

Americans with Disability Act ("ADA") (Count VIII); Section 504 retaliation (Count IX); ADA retaliation (Count X); WLAD retaliation (Count XI); civil rights violations under the Washington State Constitution (Count XII); and violation of Washington's Equal Education Opportunity Law ("EEOL"), RCW 28A.642 (Count XIII). ECF No. 30.

Defendant moved for summary judgment on all thirteen claims. ECF No. 46. Plaintiffs withdrew their intentional infliction of emotional distress claim (Count V), retaliation claims (Counts IX-XI), and Washington constitutional claim (Count XII). ECF No. 56 at 20. They oppose summary judgment on the other eight claims. In reply, Defendant acknowledged that disputed evidence concerning G.T.'s missed feedings and resulting stomach pain precludes summary judgment on the negligence claim (Count III). ECF No. 65 at 6. Defendant therefore continues to seek summary judgment on the seven contested claims and the five withdrawn claims. *Id.* at 7.

**LEGAL STANDARD**

The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019). "A fact is 'material' only if it might affect the outcome of the case, and a

dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the portions of the record and the evidence that demonstrate the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. After the moving party has satisfied its burden, to survive summary judgment, the non-moving party must demonstrate with evidence on the record, "specific facts" showing that there is a genuine dispute of material fact for trial. *Id.* at 324. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient[.]" *Anderson*, 477 U.S. at 252.

The Court "must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor." *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inference from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255.

## DISCUSSION

The Court grants Defendant's motion as to Plaintiffs' withdrawn claims for intentional infliction of emotional distress (Count V), retaliation under Section 504, the ADA, and the WLAD (Counts IX-XI), and violation of the Washington Constitution (Count XII). The Court denies the motion as to negligence (Count III), consistent with Defendant's concession. The contested claims are disability discrimination under Section 504 (Count I), disability discrimination under the ADA (Count VIII), and disability discrimination under the WLAD (Count II), violation of the EEOL (Count XIII), G.T.'s negligent infliction of emotional distress claim (Count IV), Mrs. Trueax's bystander negligent infliction of emotional distress claim (Count VII), and loss of consortium (Count VI). The Court addresses each in turn.

### A. Section 504 Disability Discrimination

Defendant moves for summary judgment on Plaintiffs' Section 504 claim, asserting that Plaintiffs failed to exhaust the Individuals with Disabilities Education Act's ("IDEA") administrative remedies concerning G.T.'s ninth-grade placement and that they cannot establish disability discrimination or deliberate indifference. ECF No. 46 at 8-10. Plaintiffs respond that exhaustion is unnecessary because they seek damages and that disputed evidence concerning

G.T.'s missed feedings, exposure to coughing, and continued placement at McFarland supports their discrimination claim. ECF No. 56 at 11.

To establish a claim under Section 504, a plaintiff must demonstrate that he is an individual with a disability, is otherwise qualified to receive the benefit at issue, was denied that benefit solely because of his disability, and that the program receives federal financial assistance. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). A plaintiff may establish prohibited discrimination by showing that a school district denied a reasonable accommodation necessary for meaningful access to public education. *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016). The accommodation must be necessary, reasonable, and available. *Mark H. v. Hamamoto*, 620 F.3d 1090, 1097-98 (9th Cir. 2010). A plaintiff seeking damages must also establish intentional discrimination, which may be shown through deliberate indifference. *Duvall*, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that . . . likelihood." *Id.* at 1139. Notice may arise from a request for accommodation or an obvious need for assistance. *Id.* Once on notice, the public entity must investigate the individual's needs and determine an appropriate accommodation. Its failure to act must involve a deliberate decision beyond mere negligence. *Id.*

Defendant's exhaustion argument does not warrant summary judgment. The

IDEA requires exhaustion before pursuing relief under another federal statute only when the relief sought is also available under the IDEA. *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147-48 (2023). That requirement does not bar a claim seeking compensatory damages, which the IDEA does not provide, even when the alleged injury concerns the denial of educational services. *Id.* at 150. Plaintiffs expressly disclaim prospective injunctive relief in their response and seek damages for the alleged discrimination. ECF No. 56 at 11. Their challenge to G.T.'s placement therefore does not require exhaustion merely because the placement decision also implicates the IDEA.

The evidence concerning G.T.'s feedings raises a genuine dispute about whether Defendant deliberately failed to provide assistance necessary for him to participate in school. Greeno acknowledges that she was primarily responsible for his feedings and that he needed assistance approximately 40 percent of the time. ECF No. 50 at 3. Plaintiffs describe repeated occasions when G.T. returned home with full feeding bags, including occasions when both school feedings had been missed. ECF No. 59 at 3; ECF No. 60 at 5. Mrs. Trueax further states that she notified Greeno on November 7, 2023, that G.T. was losing weight because of missed feedings and that the missed feedings continued after she reported the weight loss and his physician's concerns. ECF No. 60 at 7. Plaintiffs also describe a classroom visit during which the feeding pump alarmed and Ramirez-Morelos

directed G.T. to address it without providing assistance despite his distress. ECF No. 59 at 4; ECF No. 60 at 6.

Defendant characterizes the missed feedings as supervisory oversights that could at most establish negligence. ECF No. 46 at 10. But Plaintiffs' evidence concerns repeated failures after staff knew that G.T. required assistance and received notice that the missed feedings were affecting his health. A jury crediting that evidence could reasonably reject Defendant's explanation that staff simply overlooked their responsibilities and find that they deliberately disregarded his known need for feeding assistance. The evidence also permits a finding that this assistance was necessary for G.T. to attend school safely and participate in instruction. Whether the failures resulted from isolated mistakes or deliberate inaction requires resolution of the parties' competing accounts.

The evidence concerning G.T.'s sensory needs presents a separate factual dispute. His December 2022 IEP documents his sensitivity to coughing and other sounds. ECF No. 50-1 at 30. Mrs. Trueax testified that, at the December 4, 2023, IEP meeting, Ramirez-Morelos and Greeno admitted deliberately coughing around G.T. to desensitize him. ECF No. 57 at 69. Mr. Trueax similarly states that both teachers described employing desensitization. ECF No. 59 at 4. Defendant's witnesses deny deliberately coughing and maintain that desensitization was discussed and rejected. ECF No. 47 at 5; ECF No. 50 at 6; ECF No. 51 at 4.

Plaintiffs' testimony concerns statements by Defendant's employees about their classroom practices, which are not hearsay when offered against Defendant.[1] Fed. R. Evid. 801(d)(2)(D). If credited, that testimony would permit a jury to find that staff knowingly aggravated a disability-related barrier to G.T.'s participation in class.

Plaintiffs also present evidence that Defendant failed to accommodate G.T.'s sensory limitations by declining a temporary classroom change. Mrs. Trueax states that Ramirez-Morelos's cough persisted for at least two months and that she requested a classroom change while the cough continued. ECF No. 60 at 8. G.T.'s pediatrician supported allowing him to attend only Greeno's classroom. ECF No.

---

[1] Defendant also objects that Mrs. Trueax's and Taylor's deposition excerpts are not properly authenticated. ECF No. 66 at 10. At summary judgment, the Court may consider evidence whose contents can be "presented in a form that would be admissible at trial." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021). The testimony on which the Court relies can be presented through the witnesses at trial. Defendant also submitted the identifying pages and reporter's certificate for Mrs. Trueax's deposition. ECF No. 49-1 at 2-3, 30. The Court therefore overrules the authentication objections to the deposition excerpts on which it relies.

47 at 5. Defendant rejected the request, explaining that Ramirez-Morelos's classroom provided appropriate reading instruction and that students and staff in Greeno's classroom also occasionally coughed. *Id.* at 6. Ramirez-Morelos states, however, that the occasional coughing in Greeno's classroom occurred "without complaint from G.T." ECF No. 51 at 5.

Viewed in Plaintiffs' favor, this evidence creates a factual dispute concerning whether a temporary change to a classroom G.T. already attended was a reasonable and available accommodation. Defendant's explanation that Ramirez-Morelos's classroom met his instructional needs must be considered alongside Plaintiffs' evidence that his distress prevented him from accessing that instruction. Defendant's decision also rested in part on its position that Ramirez-Morelos did not repeatedly cough in G.T.'s presence, which Mrs. Trueax disputes. ECF No. 47 at 6; ECF No. 60 at 8. A jury crediting Plaintiffs' account could find that Defendant knew the existing classroom arrangement prevented G.T. from participating in instruction and deliberately failed to accommodate that limitation. The Court therefore denies summary judgment on this theory.

Plaintiffs also challenge Defendant's decision to keep G.T. at McFarland for ninth grade. For purposes of summary judgment, the Court accepts Plaintiffs' testimony that Defendant presented the placement as a completed decision without meaningful discussion of alternatives. ECF No. 59 at 3; ECF No. 60 at 4. To

recover damages under Section 504, however, Plaintiffs must present evidence of deliberate indifference. *Duvall*, 260 F.3d at 1138-39. Even assuming that separation from his peers without disabilities denied G.T. an educational benefit, the disputed account of parental participation does not establish that Defendant knowingly disregarded a substantial likelihood that educating him at McFarland would deny him meaningful access to education. While the subsequent failures to provide feeding assistance and sensory accommodations support Plaintiffs' challenges to those services, they do not establish deliberate indifference in the earlier decision to educate G.T. at McFarland rather than Othello High School. The Court therefore grants summary judgment to the extent the Section 504 claim rests on that placement decision.

The Court thus grants Defendant's motion as to the ninth-grade school placement theory and denies it as to the alleged failures to provide feeding assistance and accommodate G.T.'s sensory limitations, including the denial of a temporary classroom change.

**B. ADA Disability Discrimination**

Defendant moves for summary judgment on Plaintiffs' ADA claim, raising the same exhaustion and merits arguments asserted against their Section 504 claim. ECF No. 46 at 8-10. Plaintiffs respond that exhaustion is unnecessary because they seek damages and that the evidence concerning G.T.'s feedings, sensory

needs, and placement also supports their ADA claim. ECF No. 56 at 11.

Title II of the ADA requires Plaintiffs to establish that G.T. is a "qualified individual with a disability," that he was excluded from or denied the benefits of Defendant's services or otherwise discriminated against, and that the exclusion, denial, or discrimination occurred "by reason of his disability." *Duvall*, 260 F.3d at 1135. A failure to provide reasonable accommodations necessary for meaningful access to education may establish prohibited discrimination under both Title II and Section 504. *A.G.*, 815 F.3d at 1206. The deliberate indifference standard discussed above also applies to Plaintiffs' ADA claim for damages. *Duvall*, 260 F.3d at 1138. Similarly, the Court's exhaustion analysis applies equally to this claim. Plaintiffs have disclaimed prospective injunctive relief and seek compensatory damages unavailable under the IDEA. ECF No. 56 at 11. They therefore were not required to exhaust the IDEA's administrative remedies before pursuing that relief under the ADA. *Luna Perez*, 598 U.S. at 147-48.

The same analysis applies to the merits of Plaintiffs' ADA claim. The evidence presents genuine disputes concerning whether Defendant deliberately failed to provide feeding assistance and sensory accommodations necessary for G.T. to access his education, including a temporary classroom change. The evidence concerning the earlier decision to educate G.T. at McFarland during ninth grade does not support a finding of deliberate indifference. Accordingly, the Court

grants Defendant's motion as to the ninth-grade school placement theory and denies it as to the alleged failures to provide feeding assistance and accommodate G.T.'s sensory limitations.

**C. WLAD Disability Discrimination**

Defendant moves for summary judgment on Plaintiffs' WLAD disability discrimination claim. It argues that Plaintiffs cannot establish that G.T. received services unequal to those provided to students without disabilities or that his disability was a substantial factor in the alleged discrimination. ECF No. 46 at 10. Defendant further contends that the WLAD does not require services unavailable to students without disabilities and that Plaintiffs cannot establish pretext for its stated reasons. *Id.* at 11-12. Plaintiffs respond that the missed feedings, exposure to coughing, and ninth-grade placement denied G.T. full enjoyment of school. ECF No. 56 at 15.

RCW 49.60.215 prohibits disability discrimination in places of public accommodation. To establish a prima facie claim, Plaintiffs must show that (1) G.T. has a disability, (2) Defendant operates a place of public accommodation, (3) G.T. received treatment that was not comparable to the services provided to individuals without disabilities, and (4) his disability was a substantial factor causing the discrimination. *Fell v. Spokane Transit Auth.*, 911 P.2d 1319, 1328 (Wash. 1996). A school district is strictly liable for its employees' discriminatory

conduct in violation of this provision. *W.H. v. Olympia Sch. Dist.*, 465 P.3d 322, 326 (Wash. 2020). "'Comparable' does not mean identical." *Negron v. Snoqualmie Valley Hosp.*, 936 P.2d 55, 58 (Wash. Ct. App. 1997). A place of public accommodation must reasonably accommodate known limitations when providing the same service would prevent a person with a disability from fully enjoying the accommodation. WAC 162-26-080(1). Whether an accommodation is reasonable ordinarily presents a factual question. *Negron*, 936 P.2d at 59. Although the WLAD does not require additional services beyond those otherwise offered, it may require different measures to provide persons with disabilities comparable access to existing services. *Wash. State Commc'n Access Project v. Regal Cinemas, Inc.*, 293 P.3d 413, 422 (Wash. Ct. App. 2013).

Viewed in Plaintiffs' favor, the evidence permits a finding that Defendant failed to provide accommodations necessary for G.T. to access school. G.T.'s feeding plan required two feedings during school hours, and the parties agree that he missed at least four feedings. ECF No. 68 at 3. Mrs. Trueax states that missed feedings continued after she notified Greeno that G.T. was losing weight. ECF No. 60 at 7. Plaintiffs also describe observing Ramirez-Morelos direct G.T. to fix his feeding pump without assisting him despite his visible distress. ECF No. 59 at 4; ECF No. 60 at 6. This evidence creates a factual dispute concerning whether

Defendant adequately implemented the feeding accommodations G.T. required during the school day.

The evidence concerning G.T.'s sensory limitations likewise presents disputed facts. Mrs. Trueax testified that Ramirez-Morelos and Greeno admitted deliberately coughing around G.T. to desensitize him. ECF No. 57 at 69. Defendant disputes that account and maintains that desensitization was discussed and rejected. ECF No. 47 at 5. Mr. Trueax also describes G.T. becoming distressed in Ramirez-Morelos's classroom and increasingly resistant to attending school. ECF No. 59 at 4. Defendant declined the requested classroom change, citing G.T.'s educational needs and the possibility of coughing in Greeno's classroom. ECF No. 47 at 6. A jury could find that Defendant's response failed to reasonably accommodate G.T.'s known sensory limitations and deprived him of comparable access to school because of those limitations.

A jury could reasonably reject Defendant's explanations for the missed feedings and its response to G.T.'s sensory limitations. Once a defendant offers a legitimate, nondiscriminatory explanation for its conduct, the plaintiff must present evidence that the explanation is pretextual. *Fell*, 911 P.2d at 1331. Here, evidence that missed feedings continued after notice of G.T.'s weight loss, together with Ramirez-Morelos's reported failure to assist him with his pump, could support a finding that Defendant's explanations of oversight and efforts to promote

independence are unworthy of belief. Mrs. Trueax also testified that staff admitted deliberately coughing around G.T., contrary to Defendant's account that desensitization was discussed and rejected. The Court may not resolve these competing accounts on summary judgment.

The ninth-grade placement theory also presents a factual dispute under the WLAD. Defendant maintains that the placement resulted from an individualized assessment of G.T.'s needs and a discussion of alternatives with Plaintiffs. ECF No. 47 at 3-4. Plaintiffs state that Defendant instead presented McFarland as the only option, without meaningful discussion, while G.T.'s peers without disabilities advanced to Othello High School. ECF No. 59 at 3; ECF No. 60 at 4. A jury crediting their account could question whether Defendant's stated explanation for the different placement reflected the actual decision-making process. *See Fell*, 911 P.2d at 1331. The WLAD claim does not require the additional showing of deliberate indifference necessary to recover damages under the federal claims. *See id.* at 1328. These competing accounts therefore require resolution under the WLAD's standards for comparable treatment and pretext. The Court denies Defendant's motion for summary judgment on this claim, including the ninth-grade placement theory.

**D. Equal Education Opportunity Law**

Defendant moves for summary judgment on Plaintiffs' EEOL claim. It argues that this claim should be analyzed under the WLAD and fails for the same asserted lack of discrimination. ECF No. 46 at 20; ECF No. 65 at 7. Plaintiffs respond that the evidence supporting their WLAD claim also establishes disputed facts concerning discrimination that deprived G.T. of access to educational opportunities. ECF No. 56 at 20.

RCW 28A.642.010 prohibits discrimination in Washington public schools based on "the presence of any sensory, mental, or physical disability." The statute expressly authorizes a person aggrieved by a violation of the chapter or its implementing rules or guidelines to seek "civil damages and such equitable relief as the court determines." RCW 28A.642.040. Defendant acknowledges this express right of action but relies on authorities concerning implied causes of action to propose applying the WLAD framework. ECF No. 46 at 19-20.

The factual disputes that preclude summary judgment on Plaintiffs' WLAD claim also preclude summary judgment on their EEOL claim. Plaintiffs have presented evidence that G.T. continued to miss feedings after Mrs. Trueax notified Greeno of his weight loss and that Ramirez-Morelos failed to assist him when his feeding pump sounded an alarm. ECF No. 59 at 4; ECF No. 60 at 7. Mrs. Trueax also testified that staff admitted deliberately coughing around G.T. to desensitize

him. ECF No. 57 at 69. Mr. Trueax described G.T.'s resulting distress and increasing resistance to attending school. ECF No. 59 at 4. Viewed in Plaintiffs' favor, this evidence would permit a jury to find that disability discrimination interfered with G.T.'s ability to participate in Defendant's educational program.

Defendant identifies no deficiency in the EEOL claim beyond its incorporated arguments that Plaintiffs cannot establish disability discrimination. For the reasons discussed in the WLAD analysis, factual disputes concerning G.T.'s feedings, sensory accommodations, and ninth-grade placement preclude summary judgment on those grounds. Accordingly, the Court denies Defendant's motion for summary judgment on this claim.

**E. Negligent Infliction of Emotional Distress**

Defendant moves for summary judgment on G.T.'s negligent infliction of emotional distress claim. It argues that Plaintiffs have not identified unreasonably dangerous conduct and that this claim duplicates the discrimination claims. ECF No. 46 at 16. Plaintiffs respond that repeated exposure to coughing caused G.T. fear, panic, anxiety, and posttraumatic stress disorder. ECF No. 56 at 17.

A plaintiff asserting a negligent infliction of emotional distress claim must establish duty, breach, proximate cause, and injury. *Haubry v. Snow*, 31 P.3d 1186, 1193 (Wash. Ct. App. 2001). The emotional distress must be "susceptible to medical diagnosis and proved through medical evidence." *Hegel v. McMahon*, 960

P.2d 424, 431 (Wash. 1998). In *Francom v. Costco Wholesale Corp.*, the Washington Court of Appeals affirmed summary judgment on a negligent infliction of emotional distress claim arising from the same allegedly discriminatory conduct supporting the plaintiff's WLAD claim. 991 P.2d 1182, 1192 (Wash. Ct. App. 2000). The court explained that "a plaintiff will not be permitted to be compensated twice for the same emotional injuries." *Id.* Thus, a separate negligent infliction of emotional distress claim may proceed when nondiscriminatory conduct causes a distinct emotional injury. *Id.*

G.T.'s negligent infliction of emotional distress claim rests on the same conduct and emotional injuries underlying his WLAD claim. In opposing summary judgment, Plaintiffs rely on G.T.'s repeated exposure to coughing during Fall 2023 and the resulting fear, panic, anxiety, and PTSD. ECF No. 56 at 17. They rely on those same incidents and their effects on G.T. to support the WLAD claim. *Id.* at 15. The amended complaint likewise alleges that District employees discriminated against G.T. by deliberately triggering his emotional distress through coughing. ECF No. 30 at 21. Plaintiffs' medical evidence addresses the existence and cause of G.T.'s emotional injuries, but they identify no separate conduct or injury supporting an independent negligent infliction of emotional distress claim. Their response also does not address Defendant's argument that the claims are duplicative. ECF No. 56 at 17-18. As presented, this claim seeks recovery for the

same emotional injuries arising from the same conduct alleged to violate the WLAD. Under *Francom*, it cannot proceed separately. *See also Haubry*, 31 P.3d at 1193. Accordingly, the Court grants Defendant's motion for summary judgment on G.T.'s negligent infliction of emotional distress claim.

**F. Bystander Negligent Infliction of Emotional Distress**

Defendant moves for summary judgment on Mrs. Trueax's bystander negligent infliction of emotional distress claim, arguing that she did not observe G.T.'s injuries at the scene or during their immediate aftermath. ECF No. 46 at 18. Plaintiffs respond that Mrs. Trueax personally observed G.T.'s distress and physical deterioration and experienced depression and anxiety as a result. ECF No. 56 at 18.

A bystander negligent infliction of emotional distress claim permits recovery for emotional trauma resulting from observing or discovering another person's negligently inflicted physical injury. *Hegel*, 960 P.2d at 426. A family member need not witness the event but must encounter the injured relative at the scene shortly afterward, "before there is substantial change in the relative's condition or location." *Id.* at 429. The plaintiff must have an "actual sensory experience of the pain and suffering of the victim." *Colbert v. Moomba Sports, Inc.*, 176 P.3d 497, 503 (Wash. 2008).

The evidence Plaintiffs expressly rely on in their bystander analysis does not

establish this required observation. Plaintiffs emphasize that Mrs. Trueax saw G.T. return home crying and shaking, observed his weight loss, and experienced depression after learning of his alleged mistreatment. ECF No. 56 at 18. These observations concern G.T.'s deterioration over time and Mrs. Trueax's subsequent discovery of the alleged mistreatment. Without more, they do not establish that she witnessed an injury or encountered its immediate aftermath before a substantial change in the attendant circumstances. *See Colbert*, 176 P.3d at 503. The Court thus grants Defendant's motion for summary judgment on this claim.

**G. Loss of Consortium**

Defendant moves for summary judgment on Mr. and Mrs. Trueax's loss of consortium claim, arguing that RCW 4.24.010 does not permit recovery for emotional distress and that Plaintiffs have not presented evidence of injury to the parent-child relationship. ECF No. 46 at 17. Plaintiffs respond that Mrs. Trueax's observations of G.T.'s deterioration and her resulting depression and anxiety support recovery under the statute. ECF No. 56 at 18-19.

RCW 4.24.010(1) authorizes a parent who has regularly contributed to the support of a minor child to maintain an action for the child's injury. Recoverable damages include compensation for the "loss of love and companionship of the child" and "injury to or destruction of the parent-child relationship." RCW 4.24.010(2). Each parent may recover for that parent's own loss. RCW

4.24.010(4). Defendant wrongly contends that the statute excludes emotional distress damages. The Washington Supreme Court has construed RCW 4.24.010 to permit recovery for "parental grief, mental anguish and suffering" resulting from the wrongful injury or death of a child. *Wilson v. Lund*, 491 P.2d 1287, 1290 (Wash. 1971). The court expressly rejected separating these statutory damages from parental emotional harm, explaining that it "could not conclude that recovery for 'injury to or destruction of the parent-child relationship' differs from recovery for mental anguish." *Id.* at 1292. Plaintiffs therefore need not establish a separate loss of companionship to recover for mental anguish caused by G.T.'s wrongful injury.

Mrs. Trueax states that she developed severe depression, anxiety, and intrusive thoughts concerning G.T.'s distress and weight loss and that she continues to attend counseling. ECF No. 60 at 10. She also testified that seeing and hearing G.T. in distress and learning of his alleged mistreatment caused her to become deeply depressed. ECF No. 57 at 69. Mr. Trueax likewise describes distress upon observing G.T.'s weight loss, increasing weakness, and more visible ribs. ECF No. 59 at 4. He also states that he was disturbed by the teacher's failure to assist G.T. when G.T. appeared visibly distraught. *Id.* Plaintiffs have presented evidence of emotional harm recoverable under RCW 4.24.010. Defendant acknowledges a factual dispute concerning negligence arising from G.T.'s missed

feedings. ECF No. 65 at 6. The Court therefore denies summary judgment on this claim.

**CONCLUSION**

For the reasons discussed above, the Court grants in part and denies in part Defendant's motion for summary judgment.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 46**, is **GRANTED in part and DENIED in part**.
2. Defendant's Motion is **GRANTED** as to Plaintiffs' claims for negligent infliction of emotional distress (Counts IV and VII), intentional infliction of emotional distress (Count V), retaliation under Section 504, the ADA, and the WLAD (Counts IX-XI), and violation of the Washington Constitution (Count XII). Those claims are **DISMISSED**. Defendant's motion is also **GRANTED** as to the Section 504 and ADA claims (Counts I and VIII) to the extent they rest on the decision to educate G.T. at McFarland Middle School during ninth grade rather than Othello High School.
3. Defendant's motion is otherwise **DENIED** as to the Section 504 and ADA claims (Counts I and VIII) and is **DENIED** as to the WLAD, negligence, loss of consortium, and EEOL claims (Counts II, III, VI, and

XIII).

**IT IS SO ORDERED.** The District Court Executive is directed to file this order and provide copies to counsel.

DATED November 2, 2026.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE